## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

SCANNING TECHNOLOGIES
INNOVATIONS, LLC,

      Plaintiff,

v.

EZ WEB ENTERPRISES, INC.

      Defendant.

Case No. 6:21-cv-00492

PATENT CASE

JURY TRIAL DEMANDED

## EZ WEB ENTERPRISES INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS WITH MEMORANDUM OF LAW IN SUPPORT

# TABLE OF CONTENTS

I.     STAGE AND NATURE OF PROCEEDINGS .......................................................1

II.    SUMMARY OF THE ARGUMENT ...................................................................2

III.   STATEMENT OF THE FACTS ........................................................................3

IV.    LEGAL STANDARD........................................................................................6

       A.     This case should be dismissed for failure to state a claim. .........................6

       B.     The Law of 35 U.S.C. § 101. ...................................................................7

V.     ARGUMENT ...................................................................................................8

       A.     The '101 Patent is Invalid Under 35 U.S.C. § 101 ....................................9

              1.     *Alice* Step 1: The '101 Patent is directed to the
                     abstract idea of communicating information about an
                     article of commerce by use of a marking.........................................9

              2.     *Alice* Step 2: No inventive concept to transform the
                     abstract idea into patent-eligible subject matter is
                     disclosed.................................................................................13

              3.     The remaining claims are also abstract and contain no
                     "inventive concept."..................................................................17

VI.    CONCLUSION................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Directv, LLC,*
838 F.3d 1253 (Fed. Cir. 2016)......................................................................7, 12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
134 S. Ct. 2347 (2014)............................................................................ *passim*

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.,*
687 F.3d 1266 (Fed. Cir. 2012)...........................................................................5

*Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC,*
827 F.3d 1341 (Fed. Cir. 2016).........................................................................13

*Berkheimer v. HP Inc.,*
881 F.3d 1360 (Fed. Cir. 2018)............................................................12, 14, 15

*Bilski v. Kappos,*
561 U.S. 593 (2010)..........................................................................................5, 6

*BSG Tech LLC v. Buyseasons, Inc.,*
899 F.3d 1281 (Fed. Cir. 2018)........................................................................1, 12

*Cellspin Soft, Inc . v. Fitbit, Inc.,*
927 F.3d 1306 (Fed. Cir. 2019)                                                       6

*ChargePoint, Inc. v. SemaConnect, Inc.,*
920 F.3d 759 (Fed. Cir. 2019).....................................................................9, 10, 13

*Content Extraction & Transmission LLC v. Wells Fargo Bank,*
776 F.3d 1343 (Fed. Cir. 2014).......................................................................6, 11

*Diamond v. Chakrabarty,*
447 U.S. 303 (1980).............................................................................................5

*Diamond v. Diehr,*
450 U.S. 175 (1981).............................................................................................6

*Dworkin v. Hustler Magazine, Inc.,*
867 F.2d 1188 (9th Cir.1989) ..............................................................................4

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)................................................................1

*Epic IP LLC v. Backblaze, Inc.*,
    351 F. Supp. 3d 733 (D. Del. 2018)........................................................10

*Finjan, Inc. v. Blue Coat System, Inc.*,
    879 F.3d 1299 (Fed. Cir. 2018)................................................................7

*Fleming v. Pickard*,
    581 F.3d 922 (9th Cir. 2009) ...................................................................5

*Fort Props., Inc. v. Am. Master Lease LLC*,
    671 F.3d 1317 (Fed. Cir. 2012)................................................................6

*Hal Roach Studios, Inc. v. Feiner*,
    883 F.2d 1429 (9th Cir. 1989) .................................................................4

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1322 (Fed. Cir. 2017)..............................................................13

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..............................................................10

*Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*,
    66 F. Supp. 3d 829 (E.D. Tex. 2014)......................................................10

*Mace v. Ocwen Loan Servicing, LLC*,
    16-cv-05840-MEJ, 2018 WL 368601 (N.D. Cal. Jan. 11, 2018)...................4, 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    132 S. Ct. 1289 (2012).............................................................................6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
    521 F.3d 1097 (9th Cir. 2008) .................................................................4

*Parker v. Flook*,
    437 U.S. 584 (1978).................................................................................6

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) ......11

*Procter & Gamble Co. v. QuantifiCare Inc.*,
    17-CV-03061-LHK, 2017 WL 6497629 (N.D. Cal. Dec. 19, 2017) ..................5

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .......................................................................................7

*Secured Mail Solutions LLC v. Universal Wilde, Inc.*,
    873 F.3d 905 (Fed. Cir. 2017) ...........................................................................1, 8, 9, 14

*In re TLI, Commc'ns LLC Patent Litig.*,
    823 F.3d 607 (Fed. Cir. 2016) ................................................................................9, 12, 13

*Ultramercial, Inc. v. Hulu*,
    LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) .................................5, 11, 15

**Statutes**

35 U.S.C. § 101 .............................................................................................. *passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) ..............................................................................4

Rule 12(c) of the Federal Rules of Civil Procedure ....................................................... *passim*

Plaintiff Scanning Technologies is an established non-practicing entity, and its principal (and sole inventor of the asserted patent) has a history of filing serial litigation but then dismissing cases when met with resistance, before any decisions can be rendered on the merits. Since January 1, 2020, Scanning Technologies has filed thirty cases in ten different federal jurisdictions, all of which assert either the '101 Patent, or U.S. Patent. No. 9,934,528 (the "'528 Patent"). Both the '101 and the '528 patents are continuations of (and claim priority to) U.S. patent application Ser. No. 13/405,246 filed on Feb. 25, 2012, now U.S. Pat. No. 8,469,270. Scanning Technologies twice agreed to dismiss cases with prejudice after a 35 U.S.C. § 101 motion was filed, but before such motion could be heard. *See, e.g., Scanning Technologies LLC v. Linga*, *LLC*, 2-20-cv-00429 (M.D. Fl.), *Scanning Technologies v. Eposnow, LLC*, 6-20-cv-00990 (M.D. Fl.).  Additionally, defendants in other jurisdictions are seeking dismissal under 35 U.S.C. § 101.  *See, e.g.  Scanning Technologies v. Night Out, Inc.* 2-21-cv-02620 (C.D. Cal.)[1], *Scanning Technologies v. Finale, Inc.*, 5-21-cv-03119 (N.D. Cal.). Scanning Technologies's repeated lawsuits, coupled with its decisions to dismiss such suits in view of a 35 U.S.C. § 101 motion, make this one of the "rare cases where it is appropriate to resolve Section 101 eligibility of the patents-in-suit as a Rule 12(b) motion to dismiss." *Aeritas LLC v. Sonic Corp.*, 6:20-CV-00103-ADA (Mar. 14, 2020).

Indeed, in a similar case concerning a patent by the same inventor, Leigh Rothschild, the court found the case exceptional in part due to the plaintiff's "vexatious litigation." *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc*., 494 F. Supp. 3d 263, 267 (D. Del. 2020).  In *Rothschild*, the plaintiff filed eleven cases asserting infringement of the patent-in-suit in the span of two years. *Id.* at 264. Defendant CompanyCam moved to dismiss the case on patent eligibility grounds, and the court stated it would grant the motion during the oral argument of the motion. *Id.* The plaintiff then dismissed the case before the Court's order was entered and prolonged litigation against defendants in other cases. *Id.* at 268. The

---

[1] Fish and Richardson represents Night Out, Inc. and has informed Scanning Technologies  of Night Out's intent to file a motion to dismiss under 35 U.S.C. § 101.

District of Delaware described the plaintiff's litigation conduct as "troubling" and deemed the case exceptional in view of the totality of circumstances and awarded attorneys' fees to the defendant. *Id.* at 267-269. The court was also concerned about the plaintiff's principal's conduct, noting that Mr. Rothschild had filed 820 lawsuits without reaching the merits in any of them. *Id.* at 266. Scanning Technologies has demonstrated similar litigation conduct here, and without an early look at the merits, they may continue their vexatious litigation without risking a decision on the merits. Thus, this case, and the instant motion, merits treatment as a "rare case." *Aeritas LLC*, 6:20-CV-00103-ADA.

## I.  STAGE AND NATURE OF PROCEEDINGS

On May 12, 2021, Plaintiff Scanning Technologies Innovations ("Scanning Technologies" or "Plaintiff") filed this lawsuit accusing Defendant EZ Web, Enterprises, Inc. ("EZ Web") of infringing U.S. Patent No. 10,600,101, entitled "Systems and Methods for Indicating the Existence of Accessible Information Pertaining to Articles of Commerce" (the "'101 Patent" or "Asserted Patent"). Scanning Technologies accuses EZ Web's EZOfficeInventory system, associated hardware and software, and similar products of infringing at least Claim 1 of the '101 Patent. (D.I. 1 at ¶¶ 13–26.).

## II.  SUMMARY OF THE ARGUMENT

EZ Web moves to dismiss Scanning Technologies' Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings. The claims of the Asserted Patent are invalid because they are directed to patent-ineligible subject matter under 35 U.S.C. § 101. The claims recite the mere notion of using generic computer components to achieve the abstract idea of communicating information about an article of commerce by use of a marking. Indeed, the claims at issue here "fall into a familiar class of claims "directed to" a patent-ineligible concept." *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Much like the Barcode and QR claims at issue in *Secured Mail*, the claims at issue here "merely provide that an identifier is affixed to [an article of commerce] that is used by the recipient to request and display electronic information." *Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910 (Fed. Cir. 2017).

2

Moreover, the recited components, "a mobile device" comprising a "signal processing device" and a "visual input device," and "a server," do not amount to any technical improvement in the functioning of the system or any components. Rather, these components are used only as tools to implement the abstract idea of communicating information about an article of commerce by use of a marking. *See BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290–91 (Fed. Cir. 2018) ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-eligible application of an abstract idea.").  The claims of the '101 Patent thus lack an inventive concept.

Resolving this issue does not require discovery or formal claim construction. The '101 Patent does no more than disclose an abstract idea using conventional and well-known components. Therefore, the claims of the patent are invalid under § 101 for failure to claim patent eligible subject matter. To avoid waste of judicial and party resources unnecessarily litigating an invalid patent, EZ Web thus requests that the Court enter judgment in its favor on the causes of action in the Complaint pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## III.   STATEMENT OF THE FACTS

The '101 Patent was filed on April 9, 2018, and issued on March 24, 2020. It is entitled "[s]ystems and methods for indicating the existence of accessible information pertaining to articles of commerce," and is directed to "systems and methods for enabling a mobile device to indicate the existence of accessible information about an identified article of commerce." '101 Patent at 1:28-30.

The applicant acknowledged that numerous technologies existed at the time of their application. *Id*. For example, the applicant acknowledged that "[p]ortable digital devices are now common." *Id*. at 1:34. The applicant further acknowledged that "[v]arious communications technologies are frequently built into these devices" and "mobile devices may employ an incorporated imaging device to scan Universal Product Codes (UPCs) or other symbologies disposed on articles of commerce to receive more information on such articles." *Id.* at 1:48, 1:59-62. The problem identified by the applicant was that "devices take

3

time to connect to the internet (if internet service is even available) and then the user still may or may not have information on the article of commerce." *Id*. at 1:64–1:66. The applicant contended that the delay and lack of information led to user frustration. *Id.* at 1:66-2:2. The applicant thus proposed a solution whereby a user may be notified of the existence of a link to information of an article of commerce. *Id.* at 2:17–19.

But the applicant described his "solution" only with generic components and only at a high-level of generality. For example, exemplary Claim 1 of the '101 Patent describes "a system for indicating an existence of a link" consisting of: (1) a mobile device; (2) digital files; and (3) a server. *Id*. at Cl. 1. It requires that the server "store a look-up table that includes at least a plurality of bar codes associated with a plurality of articles of commerce." *Id.* The claimed mobile device includes: (1) a signal processing device; and (2) a visual input device. *Id.* Neither the claims nor the specification discloses any special algorithms or programming.

The specification states that Figure 3, below, depicts "a system in accordance with the present disclosure." *Id*. at 8:62–63.



**FIG. 3**

*Id*., Fig. 3. In Fig. 3, mobile device 100 is associated with database 110. *Id*. at 8:63-65. Database 110 may be stored in internal memory of mobile device 100 (e.g., storage module 110) or external memory communicably coupled to mobile device 100. *Id*. The mobile device 100 communicates to a server 304 via communication network 302 via any form of communication and protocol means. *Id*. at 9:5–23. Server 304 stores look-up tables in storage medium 306. *Id*. at 9:23-24. The look-up tables stores information such as Universal Product Codes (UPCs) and information links. *Id*. at 9:23–25.  Also depicted is product 310 comprising barcode 312 which may be scanned by mobile device 100.

The mobile device 100 downloads at least one look-up table from storage 306 to database 110 via communication medium 308. Mobile device 100 may then be used to scan barcode 312. Upon scanning barcode 312, mobile device 100 may look up product 310 in database 110 (which contains the look-up table downloaded from storage 306). The mobile device may then learn of the existence of a link to more information regarding product 310. Thus, the Asserted Patent claims communicating information (existence of a link to more

information) about an article of commerce by a barcode, which can be scanned by a mobile device to communicate the information.

Additionally, the plaintiff asserted the '101 Patent against 23 defendants in the span of fourteen months. None of the cases advanced past the pleading stage.

## IV.   LEGAL STANDARD

### A.   Judgment Should be Entered in Favor of EZ Web at the Pleading Stage.

In the Fifth Circuit, the standard for dismissal under Federal Rules of Civil Procedure Rule 12(c) is the same as that for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004). *See also MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1378 (Fed. Cir. 2019) (held that the Federal Circuit reviews a district court's Rule 12(c) dismissal for judgment on the pleadings under the law of the regional circuit).

A complaint can be dismissed under Rule 12(b)(6) if the factual allegations it contains, taken as true, do not state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt., LLC*, 657 F.3d 252, 254 (5th Cir. 2011). In other words, under Rule 12(b)(6), a party may move to dismiss a complaint that fails to state a claim upon which relief can be granted. "Under Rule 12(b)(6), federal courts are required to dismiss claims based upon invalid legal theories even though they might otherwise be well-pleaded." *Breen v. Tex. A&M Univ.*, 485 F.3d 325, 336 (5th Cir. 2007). Similarly, the Federal Circuit held that "[a] motion made under Rule 12(b)(6) challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys. v. SciMed Life Sys.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). To avoid dismissal under Rule 12(b)(6), "plaintiffs must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). As with any 12(b)(6) motion to dismiss, courts accept well-pled factual

allegations as true, but plaintiffs "must allege a plausible entitlement to relief in order to withstand the motion." *Twombly*, 127 S.Ct. at 1967–69.

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. See *Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718-19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

### B.    The Law of 35 U.S.C. § 101.

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and *abstract ideas*." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for protection because a monopoly over these ideas would preempt their use in all fields. *See Bilski*, 561 U.S. at 611–12. In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 2357 (quoting *Mayo Collaborative*

*Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Furthermore, the use of a generic hardware or computer technology to perform well-understood, routine, and conventional activities commonly used in industry, does not make a claim patent eligible. " *Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope."). Although factual allegations are generally presumed true in the context of a Rule 12(b)(6) inquiry, any such allegations concerning the inventive nature of the claims cannot be "wholly divorced from the claims or the specification." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019).

## V.   ARGUMENT

The claims of the Asserted Patent are invalid under 35 U.S.C. § 101 because they fail both prongs of the *Alice* test. Each of the claims is directed to the abstract idea of communicating information about an article of commerce by use of a marking. Abstract ideas are not eligible for patenting. None of the claims contains an "inventive concept sufficient to ensure that the patent in practice amounts to ***significantly more*** than a patent upon the ineligible concept itself." *See Alice*, 134 S. Ct. at 2355 (emphasis added). Because Scanning Technologies cannot state a claim upon which relief may be granted, EZ Web respectfully requests that the Court dismiss this case with prejudice. FED. R. CIV. P. 12(b)(6), 12(c).

**A.     The '101 Patent is Invalid Under 35 U.S.C. § 101**

    **1.     _Alice_ Step 1: The '101 Patent is directed to the abstract idea of communicating information about an article of commerce by use of a marking.**

Claim 1 is directed to the abstract idea of communicating information about an article of commerce by use of a marking. Assessing whether Claim 1 is directed to an abstract idea, begins by analyzing the "focus" of the claim, i.e., its "character as a whole," in order to determine whether the claim is directed to an abstract idea. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). It is necessary to examine a patent's "'claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat System, Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). A court should strip away "excess verbiage" in order to determine what the claim is directed to. *Affinity Labs of Tex., LLC v. Directv, LLC*, 838 F.3d 1253, 1256 (Fed. Cir. 2016). Here, the '101 Patent is directed to communicating information about an article of commerce by use of a marking. '101 Patent, Cl. 1. Put simply, the applicant claimed the use of conventional technology to provide information to a consumer as to whether more information about a product is available.

The idea of determining whether more information related to an article of commerce exists is a fundamental practice that can be carried out manually. In essence, the patent claims the fundamental activity of asking a salesperson for information. Take, for example, a customer who goes to a store to purchase a camera. The customer may see a camera on display. However, the customer does not know whether the camera is in stock, or whether it has all the functions the customer desires. The customer may then ask a salesperson for additional information. The salesperson may look at the displayed item, and respond that he or she can look up the information for the customer. Alternatively, the sales person may be unaware of any further information, and may inform the customer accordingly. This captures the fundamental concept of the Asserted Claim.

The Federal Circuit's decision in *Secured Mail* is highly instructive. In *Secured Mail*, the Federal Circuit held claims directed to "communicating information about a [mail object] by use of a marking" to be abstract. *Secured Mail*, 873 F.3d 905, 909 (Fed. Cir. 2017). The

claims at issue in *Secured Mail* involved using QR codes on mail packaging to obtain information related to the mailing. *Id.* at 908. This is similar to the Asserted Claim, in which a barcode is used to retrieve information. '101 Patent, Cl. 1, 7:50–64. In *Secured Mail*, the court held that the claims were "not limited to any particular technology of generating, printing, or scanning a barcode." *Secured Mail*, 873 F.3d at 911. Thus, "each step of the process is directed to the abstract process of communicating information about a mail object using a personalized marking" *Id.* In a similar manner, the Asserted Claim is simply directed to using a scanning device to scan a marking and retrieve information related to a product. '101 Patent, Cl. 1. The claims are not limited in any meaningful way to any particular technology.

The *Secured Mail* court further addressed whether *Enfish*, which was decided after the trial court rendered its opinion, altered the trial court's patent ineligibility determination. *Secured Mail*, 873 F.3d at 910. The court held that it did not, explicitly stating that the trial court had correctly determined that the claims were directed to an abstract idea. *Id.* Specifically, the court differentiated *Secured Mail* from *Enfish* by noting that the claims at issue in *Enfish* were directed to an improvement in computer functionality, while the claims in *Secured Mail* were not, stating that the claims were "not directed to a new barcode format, an improved method of generating or scanning barcodes, or similar improvements in computer functionality." *Id.*

Recently, similar barcode related claims were found patent ineligible. In *Coding Techs., LLC v. Miss. Power Co.*, the court analyzed claims directed to "using a barcode on a mobile device to facilitate bill payment." *Coding Techs., LLC v. Miss. Power Co*., 2020 U.S. Dist. LEXIS 249547, *8, 2020 WL 8410430. The court specifically found that the claims were "in all relevant respects similar to the barcode-related patents found to embrace an abstract idea as in *Secured Mail*." *Id.* at *11. Hence, the court found that the claims, which "recite a method whereby a billing transaction is facilitated by virtue of user and billing information encoded in a barcode," to be directed to an abstract idea, as "the claims do not set forth any particular method [by which] the barcode is to be generated or scanned, or any method of improving the speed, efficiency, or accuracy of barcode functionality." *Id.* The

court also found that the claims did not improve computer functionality. *Id.* The Asserted claim here are similar to the ones in *Coding Tech* in that they are directed to communicating information about an article of commerce by use of a marking (or a barcode). Additionally, the Asserted Claim uses conventional components and is not directed to an improvement in computer functionality. *See generally* '101 Patent, Cl. 1. Thus, the claims here are also directed to an abstract idea.

The claim language confirms that representative Claim 1 is directed to the abstract idea of communicating information about an article of commerce by use of a marking. The claim recites generic hardware including "a mobile device," "a visual input device," "a signal processing device," and "a server." '101 Patent, Cl. 1. Nothing in the claim language is concerned with improving the functioning of any of the hardware from a ***technical*** standpoint, which is why the claimed components are described "in vague terms without any meaningful limitations." *In re TLI, Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612–13 (Fed. Cir. 2016) ("the focus of the patentee and of the claims was not on" improved hardware because the specification described the functionality of the hardware "in vague terms without any meaningful limitations").

The Federal Circuit's decision in *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) is also instructive. The *ChargePoint* claims were directed to a communication network to facilitate finding a recharging facility, controlling the facility, and paying for the electricity consumed. *Id.* at 766. But the claim described this process only in high-level functional terms, such as "a control device to turn electric supply on and off" and "a transceiver to communicate requests." *Id.* The specification never even suggested that the charging station itself would operate differently or that it was "improved from a technical standpoint." *Id.* at 768. The Federal Circuit therefore concluded that the risk of preemption was high because the broad claim language "would cover any mechanism for implementing network communication on a charging station." *Id.* at 770. It further noted that, "[e]ven if ChargePoint's specification had provided, for example, a technical explanation of how to enable communication over a network for device interaction (which, as discussed above, it did not), the claim language here would not require those details." *Id.* at 769–70.

Like the claims in *ChargePoint*, the applicant of the '101 Patent failed to disclose the details of how to implement his system for determining the existence of more information related to an article of commerce. Instead, the applicant described the system only at a high level of generality. For example, the mobile device of the Asserted Claim has a "communication interface" which allows it to communicate with a server and look up information.'101 Patent, Cl. 1. The Asserted Claim also discloses a "server" which stores a look-up table. *Id*., 9:59–64. But nothing in Claim 1 explains how the mobile device must be programmed to download the look-up table from the server. Moreover, nothing suggests that the mobile device or any other component is "improved from a technical standpoint." *See ChargePoint*, 920 F.3d at 768. In other words, the broad claim language covers only the resulting system the applicants envisioned, but not how to achieve it. *See Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015) (concluding that claim not directed to patent-eligible subject matter where "[t]he mechanism for maintaining the state is not described, although this is stated to be the essential innovation.").

By only claiming the desired result— communicating information about an article of commerce by use of a marking —without describing any specific roadmap for doing so, Claim 1 of the '101 Patent falls short of claiming eligible subject matter under § 101. *See Internet Patents*, 790 F.3d at 1348. Indeed, the claim risks preempting *all* methods or systems for communicating information about an article of commerce by use of a marking. *See, e.g.*, *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014) (finding "preemptive effect . . . broad" where "the claims [were] largely functional in nature, they [did] not provide any significant description of the particular means by which the various recited functions are performed," and "[a]ll that [was] disclosed [was] the ultimate objective"). The law is clear that claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). Such is the situation with the Asserted Claim.

Claim 1 thus fails *Alice* step one because it is directed to a patent-ineligible abstract idea. *Alice*, 134 S. Ct. at 2355. Claim 1 of the '101 Patent is representative of all the claims because all the claims are "substantially similar and linked to the same abstract idea." *See*

12

*Content Extraction and Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (holding that district court's analysis of representative claims was appropriate where claims were "substantially similar and linked to the same abstract idea").[2] Accordingly, all of the claims of the '101 Patent are directed to an abstract idea.

    2.    ***Alice* Step 2: No inventive concept to transform the abstract idea into patent-eligible subject matter is disclosed.**

Because Claim 1 of the '101 Patent is directed to an abstract idea, the Court must next determine whether it contains an "inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357 (internal quotations omitted). To pass this test, Claim 1 "must include additional features" that "must be more than well-understood, routine, conventional activity." *Ultramercial*, 772 F.3d at 715 (quotation omitted). Here, Claim 1 is broadly generic and does not contain meaningful limitations that would restrict it to a non-routine, specific application of the abstract idea.

The applicant acknowledged that "[p]ortable digital devices are now common." The applicant further acknowledged that "[v]arious communications technologies are frequently built into these devices" and "mobile devices may employ an incorporated imaging device to scan Universal Product Codes (UPCs) or other symbologies disposed on articles of commerce to receive more information on such articles." *Id*. at 1:48, 1:59–62. The problem identified by the applicant was that "devices take time to connect to the Internet (if Internet service is even available) and then the user still may or may not have information on the article of commerce." *Id*. at 1:64–66. The applicant contended that the delay and lack of information leads to user frustration. Id. at 1:66–2:2. The applicant thus proposed a solution whereby a user may be notified of the existence of a link to information of an article of commerce. *Id.* at 2:17–19.

The solution, however, is claimed and implemented via the conventional application

---

[2] *See also Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-cv-152-JRG-RSP, 2017 WL 1065938, at *8-9 (E.D. Tex. Mar. 8, 2017) (invalidating 974 claims after analyzing only a few "representative claims" where the other claims were "substantially similar" and "linked to the same abstract idea.").

of generic means. There is no unconventional feature or activity disclosed in the Asserted Claim.  This is especially true given that no special programming or improved component is claimed. All that is disclosed to perform the functionality of retrieving information as to the existence of further information of an article of commerce is a "mobile device" having a generic "visual input device" and "signal processing device," a "server" that hosts a "look-up table," and "digital files," where the mobile devices uses the visual input device to scan a barcode and retrieve the relevant information from the look-up table. *Id.*, Cl. 1.

However, Claim 1 is altogether devoid of any technical explanation as to how to implement the purported invention. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention"). "At *Alice* step two, it is [thus] irrelevant whether [communicating information about an article of commerce by use of a marking] may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1290–91 ("As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it."); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (claims lacked an inventive concept because they "amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components"); *Affinity Labs of Tex.*, 838 F.3d 1262 (claim lacked an inventive concept because it "simply recites the use of generic features . . . as well as routine functions . . . to implement the underlying idea"). Adding generic functionality to an existing mobile device does not amount to an inventive concept as a matter of law. *See Alice*, at 2359-60.

Claim 1 fares no better when its limitations are viewed in combination. The applicant did not describe how the claimed system "is a ***technical*** improvement over prior art." *See Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (emphasis added). The applicant sought only to reduce user frustration with finding information related to an article of commerce. '101 Patent, 1:66–2:6. He did so by storing a look-up table that can be accessed locally and thus reduce user frustration because, purportedly, the user would at least know whether further information exists. *See id*. This

14

merely adds generic database functionality to the mobile device *See ChargePoint*, 920 F.3d 759, 774-75 (rejecting plaintiff's reliance on *Bascom* because the claims "do not improve the technology" but instead "merely add generic networking capabilities to [the claimed components] and say 'apply it'"). Considering the limitations in combination "add[s] nothing . . . that is not already present when the [limitations] are considered separately." *Alice*, 134 S.Ct. at 2359 (internal brackets and quotation marks omitted). There is nothing "inventive" about using a mobile device and adding generic database functionality. Claim 1 is devoid of any technical explanation as to how to implement the invention and thus provides no inventive concept. *See In re TLI*, 823 F.3d at 615 (claims failed *Alice's* step 2 where specification limited its discussion of "additional functionality" of conventional components "to abstract functional descriptions devoid of technical explanation as to how to implement the invention").

And the Asserted Patent's use of terms such as "barcodes" and "information link indicators" to describe computer components that were known in the art is not enough to confer patentability. *See Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1322, 1341 (Fed. Cir. 2017) ("In particular, the MRTs and PRTs—*although technical sounding*—include generic data types for which the system can store the extracted data.") (emphasis added). Indeed, the Supreme Court has long "warn[ed] . . . against interpreting § 101 'in ways that make patent eligibility depend simply on the draftsman's art.'" *Alice*, 134 S. Ct. at 2360 (quoting *Mayo*, 132 S. Ct., at 1294). Barcodes were known in the art. '101 Patent at 7:61–64; *see also Secured Mail*, 873 F.3d at 912("[t]he *use of barcodes was commonplace and conventional* in 2001") (emphasis added).). The information link indicator may simply be a "status or check signal," neither of which would be unknown to those in the art. *Id.* at 4:4-19.

Here again, the *Coding Techs* case is instructive. There, the court analyzed the similar barcode related patent claims under the second step of *Alice* and found that they did not disclose an inventive concept.  *See also Coding Techs.*, 2020 U.S. Dist. LEXIS 249547 at **14-19. The court specifically noted that ""[t]he use of barcodes was commonplace and conventional" as early as 2001, as was the concept of a barcode-encoded URL" *Id.* at *16

15

(citing *Secured Mail*, 873 F.3d at 912). The court also found that the claims were silent "as to the means by which [the] computing tasks are to be performed" and merely disclosed a "generic computer" performing "generic computer tasks." *Id*. at \*\*17-19. Thus, the court concluded that the patent-in-suit did not "present an inventive concept sufficient to render the abstract idea of using barcodes to facilitate bill payment patentable." *Id*. at \*20.  Similarly here, the claims of the Asserted Patent are directed to conventional barcode technology and recite only generic computer tasks performed by generic computing devices/components (e.g. "mobile device," "server," "visual input device") or generic computer software (e.g "digital files," "look-up table"). '101 Patent, Cl. 1. Thus, the claims of the '101 patent fail to disclose an inventive concept.

Unlike in *Berkheimer*, this case does not present any factual disputes requiring resolution before the Court can decide this § 101 issue. In *Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." *Berkheimer*, 881 F.3d at 1369. The Federal Circuit then examined whether the improvements described in the specification were included in the claims. For those claims where the inventive feature in the specification was "captured in the claims," the Federal Circuit found a "factual dispute regarding whether the invention describe[d] well-understood, routine, and conventional activities." *Id*. But where the claims did not recite the purportedly inventive features described in the specification, the Federal Circuit concluded that they were directed to patent ineligible subject matter under § 101. *Id.* Here, in contrast, there is no need for fact discovery at all because neither Claim 1 nor the specification of the Asserted Patent describes any unconventional components or the use of generic components in some unconventional manner, and no amount of fact discovery can change that.

As discussed above, the purported advance of Scanning Technologies's claims is the ***idea*** of communicating information about an article of commerce by use of a marking. '101 Patent at 2:17-19. But Claim 1 of the '101 Patent does not describe any ***particular mechanism*** for achieving the result. *See Secured Mail.*, 873 F.3d at 912 (claims fail *Alice* step two where "[t]he claim language does not provide any specific showing of what is

16

inventive about the [limitation in question] or about the technology used to generate and process it"). The recited limitations—whether considered individually or as an ordered combination—are insufficient to add "significantly more" to the abstract idea.

Because it is altogether devoid of any "inventive concept," Claim 1 of the '101 Patent is thus patent-ineligible under § 101. *See Alice*, 134 S. Ct. at 2359–60.

### 3. The remaining claims are also abstract and contain no "inventive concept."

The remaining claims of the Asserted Patent recite the same abstract idea: communicating information about an article of commerce by use of a marking. Indeed, the remaining independent claims of the Asserted Patent are substantially similar to the Asserted Claim. Because these independent claims cannot be meaningfully distinguished from Claim 1 of the '101 Patent, they are ineligible for the same reasons.

The dependent claims fare no better. The only differences relate to token or insignificant pre- or post-solution activity— for example, displaying the information retrieved (Claims 2, 8, 13, and 18), producing audio alerts (Claims 3, 9, 14, and 19), updating (Claims 5, 10, and 20), and linking (Claims 4, 11, 15, and 21). *See Ultramercial*, 722 F.3d at 1346 ("claim . . . will not be limited meaningfully if it contains only insignificant or token pre or post-solution activity—such as identifying a relevant audience, a category of use, field of use, or technological environment"). Indeed, all the dependent claims are written in the same or similar high-level of generality as in Claim 1 of the '101 Patent. None of these limitations is sufficient to raise the claims beyond the abstract idea to which they are directed.

Like Claim 1 of the '101 Patent, the limitations in the remaining claims are directed to the same abstract idea of communicating information about an article of commerce by use of a marking and are altogether devoid of any "inventive concept." They are thus patent ineligible under § 101. *See Alice*, 134 S. Ct. at 2359-60; *see also Berkheimer*, 881 F.3d at 1365 ("Courts may treat a claim as representative where there is no "meaningful argument for the distinctive significance of any claim limitations not found in the representative claim").

## VI.     CONCLUSION

For the foregoing reasons, EZ Web respectfully requests that the Court dismiss Scanning Technologies's Complaint based on the pleadings. Because leave to amend would be futile, EZ Web respectfully requests dismissal with prejudice.

Dated: June 22, 2021                                         Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Neil J. McNabnay*
Neil J. McNabnay
mcnabnay@fr.com
Ricardo J. Bonilla
rbonilla@fr.com
Noel Chakkalakal
chakkalakal@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070 - Telephone
(214) 747-2091 - Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been served on all counsel of record via the Court's ECF system on June 22, 2021.

*/s/ Neil J. McNabnay*
Neil J. McNabnay